UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 24-2210-cv

Caption [use short title]

Motion for: Unopposed Emergency Motion to Expedite Appeal

FuboTV Inc.

v.

The Walt Disney Company

Set forth below precise, complete statement of relief sought:

Expedited Appeal.

Appellants to file its brief by September 20, 2024.

Appellees to file its brief by November 4, 2024.

Appellants to file its reply brief by November 25, 2024.

Requested oral argument on the appeal in December 2024.

Requested court ruling on this motion as soon as possible.

MOVING PARTY: The Walt Disney Company, see Appendix A for full list    OPPOSING PARTY: FuboTV, Inc., and FuboTV Media, Inc.

☐ Plaintiff          ☑ Defendant

☑ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: J. Wesley Earnhardt, see Appendix A for full list    OPPOSING ATTORNEY: Mark C. Hansen

[name of attorney, with firm, address, phone number and e-mail]

Kellogg, Hansen, Todd, Figel & Frederick, PLLC

1615 M Street NW Suite 400 Washington, DC 20036

(202) 326-7900, mhansen@kelloghansen.com

Court- Judge/ Agency appealed from: U.S. District Court for the Southern District of New York (Hon. Margaret M. Garnett)

Please check appropriate boxes:

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____

Has this request for relief been made below?   ☐ Yes ☑ No
Has this relief been previously sought in this court?  ☐ Yes ☑ No

Requested return date and explanation of emergency: As soon as possible.
For the reasons set forth in the attached papers, expedited review is necessary
to protect against further undue harm caused by an improperly issued preliminary
injunction.

Opposing counsel's position on motion:
☑ Unopposed ☐ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☑ No ☐ Don't Know

Is the oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

/s/ J. Wesley Earnhardt          Date: 8/23/2024          Service : ☑ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

Appendix A

*Moving Parties:*

The Walt Disney Company; ESPN, Inc.; ESPN Enterprises, Inc.; Hulu, LLC; Fox Corporation; Warner Bros. Discovery Inc.

*Moving Attorneys:*

J. Wesley Earnhardt
Cravath, Swaine & Moore LLP
Two Manhattan West, 375 Ninth Avenue
New York, NY 10001
(212) 474-1000
wearnhardt@cravath.com
*Counsel for Appellants The Walt Disney Company; ESPN, Inc.; ESPN Enterprises, Inc.; and Hulu, LLC*

Andrew J. Levander
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
Andrew.levander@dechert.com
*Counsel for Appellant Fox Corporation*

David L. Yohai
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
david.yohai@weil.com
*Counsel for Appellant Warner Bros. Discovery Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| FUBOTV, INC., & FUBOTV MEDIA, INC.,<br><br>          Plaintiffs-Appellees<br><br>v.<br><br>THE WALT DISNEY COMPANY, *et al.*,<br>          Defendants-Appellants | No. 24-2210 |

## **<u>UNOPPOSED EMERGENCY MOTION TO EXPEDITE APPEAL</u>**

CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10019
(212) 474-1000
*Attorneys for Defendants The Walt Disney Company; ESPN, Inc.; ESPN Enterprises, Inc.; and Hulu, LLC.*

DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
*Attorneys for Fox Corporation*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
*Attorneys for Warner Bros. Discovery Inc.*

August 23, 2024

# CORPORATE DISCLOSURE

Pursuant to Federal Rule of Appellate Procedure 26.1, the

undersigned counsel for Defendants-Appellants The Walt Disney Company;

ESPN, Inc.; ESPN Enterprises, Inc.; Hulu, LLC; Fox Corporation; Warner Bros.

Discovery Inc. respectively certify the following:

- The Walt Disney Company, a publicly held corporation, has no parent corporation and no publicly held corporation, owns ten percent (10%) or more of its stock.
- ESPN Enterprises, Inc., is wholly owned by Defendant ESPN Inc., which is eighty percent (80%) owned by ESPN Holding Company, Inc., which is wholly owned by ABC Holding Company, Inc., which is wholly owned by ABC, Inc., which is an indirect subsidiary of The Walt Disney Company. The remaining twenty percent (20%) of ESPN, Inc. is held by The Hearst Corporation. No other entity owns ten percent (10%) or more of ESPN Enterprises, Inc. or ESPN, Inc.
- Hulu, LLC, is approximately thirty-six percent (36%) owned by ABC Enterprises Acquisition, LLC., which is a wholly-owned indirect subsidiary of The Walt Disney Company; thirty percent (30%) owned by TFCF-Hulu Holdings, Inc., which is a wholly-owned subsidiary indirectly held by TFCF America, Inc. and The Walt Disney Company; and approximately thirty-three percent (33%) owned by the Comcast Corporation. No other entity owns ten percent (10%) or more of Hulu, LLC.
- Fox Corporation is a publicly held corporation. To Fox Corporation's knowledge, other than Blackrock, Inc., a publicly held corporation that may own 10% or more of the equity of Fox Corporation, no publicly held corporation owns 10% or more of the equity of Fox Corporation.
- Warner Bros. Discovery, Inc. ("WB") is a publicly-held corporation. WB has no parent company, and to the best of WB's knowledge, no publicly held corporation owns ten percent or more of WB's stock.

i

## TABLE OF CONTENTS

Table of Authorities ............................................................................. iii

Background ...........................................................................................2

Argument ..............................................................................................5

Conclusion ..........................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001)...............5

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986) ................10

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................5

*In re Iceland Inc.*, 112 F.3d 504 (2d Cir. 1997)...................................5

*N.Y. v. Deutsche Telekom AG*, 439 F. Supp. 3d 179 (S.D.N.Y. 2020) ......................11

*Pacific Bell Telephone Co. v. LinkLine Communications, Inc.*, 555 U.S. 438 (2009)................10

*Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)................................5

*United States v. Columbia Pictures Industries, Inc.*, 507 F. Supp. 412 (S.D.N.Y. 1980), *aff'd*, 659 F.2d 1063 (2d Cir. 1981) ........................................9

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ................................................................10

**Statutes & Rules**

28 U.S.C. § 1292(a)(1) ............................................................5

28 U.S.C. § 1657 .................................................................5

§ 7 of the Clayton Act ........................................................2, 4

Fed. R. App. P. 2 ...............................................................5

Fed. R. App. P. 3 ...............................................................5

Fed. R. App. P. 4 ...............................................................5

Fed. R. App. P. 27 ..............................................................1

Fed. R. App. P. 27.1 ............................................................1

Fed. R. App. P. 31 ...........................................................1, 5

Fed. R. Civ. P. 65 ..............................................................7

§ 1 of the Sherman Act..............................................................................................2

Pursuant to Rules 2(a), 27(a)(1) and 31(a)(2) of the Federal Rules of Appellate Procedure and Rule 27.1(d) of the Local Rules of the Second Circuit, Defendants-Appellants The Walt Disney Company; ESPN, Inc.; ESPN Enterprises, Inc.; Hulu, LLC; Fox Corporation; Warner Bros. Discovery Inc., (together "Appellants") respectfully move for expedited briefing and consideration of the above-captioned appeal.[1]

### UNOPPOSED EMERGENCY MOTION TO EXPEDITE APPEAL

The district court has taken the extraordinary action of preliminarily enjoining Appellants from launching a new, consumer-friendly product only weeks before it was set to launch. Dkt290 at 291. Venu Sports ("Venu" or the "JV") is an innovative and competitively-priced streaming offering for sports-focused fans that will only add another option to the broad and continuingly growing panoply of offerings that sports and video consumers have to choose from when deciding how to spend their time and money. Appellants are appealing the district court's decision and respectfully submit that it contains multiple legal errors. Appellants' appeal should be heard on an expedited basis because time is of the essence: while

_____

[1] This motion is procedural and, therefore, is governed by subsections (b) and (c) of Federal Rule of Appellate Procedure 27, which provides that the motion may be addressed by a single Circuit Judge and ruled upon "at any time without awaiting a response". Plaintiffs-Appellees do not oppose this motion and agree to the proposed briefing schedule.

the district court's injunction remains in place, Appellants are losing tens of millions of dollars that they have invested in a start-up business that has been blocked from coming to market, dozens of employees who were hired to work for Venu are left in limbo, and consumers are denied access to the innovative new product that Venu would have provided and the increased competition that would result from a new product offering.

## BACKGROUND

On February 22, 2024, Fubo filed a complaint raising various antitrust claims against Appellants, who are television programmers that license or have licensed their networks to Fubo. Dkt1. Fubo currently carries Disney and Fox networks (along with many others unaffiliated with Appellants); it voluntarily dropped carriage of the Warner Bros. Discovery networks that include sports in 2020, and thereafter carried a large collection of Warner Bros. Discovery's non-sports related networks until dropping them after filing this lawsuit in 2024. As relevant to this motion, Fubo alleges that the launch of Appellants' new streaming service Venu, which is meant to appeal only to a small segment of the sports streaming fanbase, would violate Section 7 of the Clayton Act and Section 1 of the Sherman Act. Dkt145 at 64–65.

Appellants, the founding members of Venu, would each own one-third of Venu if it were permitted to join the array of video subscription offerings

made available to consumers. In that event, each Appellant would grant Venu a *non-exclusive* license that would permit Venu to broadcast Appellants' networks containing sports, with Venu paying market-based affiliate fees to each Appellant. Dkt291 at 21–22. Venu, in turn, would offer sports fans a monthly subscription at $42.99—a cheaper price than the typical price charged by multichannel video programing distributors ("MVPDs"), albeit for a much more limited package of networks.[2] *Id.* at 21.

Venu's management team was hired months ago and hundreds of technology employees have been working for months to prepare for Venu's launch in late August 2024. Declaration of Peter Distad in Support of Defendants-Appellants' Emergency Motion To Expedite (hereinafter "Distad Decl.") ¶ 4. All of that work is now in question due to the injunction. Each Appellant has borne and is bearing one-third of the cost associated with Venu's up-front costs. Distad Decl. ¶¶ 4, 10.

---

[2] The channels that would be offered by Venu are ABC, ESPN, ESPN2, ESPNU, ESPNews, SEC Network, ACC Network, Fox, FS1, FS2, Big Ten Network, TNT, TBS, TruTV and MLB Network. It will also provide subscribers access to ESPN+, the digital companion services of SEC Plus and ACC Network Extra, and the base tier of ESPN Flagship, expected to launch in 2025. Dkt291 at 21. Venu would not include programming (including sports programming) from CBS and NBC, nor would it contain any purely news, children's, travel or music network.

Venu's contemplated licenses to Appellants' networks are non-exclusive; each Appellant will continue to license its networks to other distributors (and each remains free to license all of its networks, including those that contain sports, on any terms that might be negotiated between each Appellant and any distributor). Many distributors—including Fubo—already have long-term agreements that guarantee the terms on which those distributors license Appellants' networks. Dkt291 at 22.

Appellants are free to launch other streaming services that could compete with Venu. Months before the announcement of Venu, Warner added to the Max streaming subscription service the same sports that are available on its Venu networks. Disney intends to launch an independent service next year, in the form of a publicly announced ESPN direct-to-consumer service known as Flagship. *Id.* The sole limitation on Appellants' future activity is that Appellants have agreed, for a period of three years, not to invest in and launch any additional joint venture in which any Appellant has an equity interest that would be similar to Venu. *Id.* They each remain free to license their sports networks independently to any existing distributor or new offering in any capacity.

On April 8, 2024, Fubo filed a motion to enjoin the launch of Venu. The parties engaged in "a period of intense but expedited discovery" limited to Fubo's challenge to the JV under Section 7 of the Clayton Act. *Id.* at 1, 57 n.37.

4

After a "five-day evidentiary hearing from August 6–12, 2024", *id.* at 1, on

August 16, 2024, the district court granted Fubo's motion to enjoin the launch of

Venu (the "injunction"). *Id.* at 5. This extraordinary injunction enjoins and

restrains "the JV Defendants and their officers, directors, employees, agents, and

all other persons acting on their behalf . . . from launching the JV pending final

adjudication of the merits of this case or further order of the Court". *Id.* at 69.

Appellants appeal that preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1)

and Federal Rules of Appellate Procedure 3 and 4.

## ARGUMENT

This Court has the inherent power to manage its own docket "so as to

achieve the orderly and expeditious disposition of cases." *Ransmeier v. Mariani*,

718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32,

43–44 (1991)). As the D.C. Circuit has recognized, "under 28 U.S.C.

§ 1657(a) the granting or denying of a preliminary injunction is the basis for an

expedited appeal". *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C.

Cir. 2001); *see also* 28 U.S.C. § 1657(a) ("each court of the United States" "shall

expedite . . . any action for temporary or preliminary injunctive relief").

Furthermore, under Rule 2 of the Federal Rules of Appellate Procedure, a court of

appeals may "suspend any provision of these rules in a particular case and order

proceedings as it directs" in order "to expedite its decision or for other good

cause". Rule 31(a)(2) also provides that "[a] court of appeals that routinely considers cases on the merits promptly after the briefs are filed may shorten the time to serve and file briefs, either by local rule or by order in a particular case". This Court has previously noted that it is "generous in granting motions to expedite." *In re Iceland Inc.*, 112 F.3d 504 (2d Cir. 1997). Courts of Appeals regularly grant motions to expedite review of Clayton Act Section 7 claims in analogous circumstances. *See, e.g.*, *United States v. Anthem, Inc.*, 855 F.3d 345, 406 (D.C. Cir. 2017) (granting expedited appeal of a permanent injunction); *United States v. AT&T, Inc.*, 916 F.3d 1029 (D.C. Cir. 2019) (expedited appeal of a denial of a permanent injunction).

Here, there is good cause for expedited briefing and consideration of this appeal.

*First*, the appeal should be expedited because the wrongful bar on the launch of the JV has caused substantial harm to Appellants and will continue to do so. As the district court order itself noted, the JV has "charted a steady progression towards launch", Dkt291 at 21, and, but for the preliminary injunction, would have launched on August 23. Approximately "150 engineers and executives were working to prepare the JV for launch." *Id.* Venu's name and pricing have been publicized. *Id.* As the district court found, a million or more consumers would

6

potentially subscribe to Venu were it available to them as an option.  *Id.* at 51–52

n.36.

Enjoining the launch of Venu causes Appellants—and the employees

who have been hired to launch Venu— substantial hardship.  By the end of

August, Appellants together will have invested approximately $74 million in

preparing for the launch of a new streaming business, in hiring personnel for that

business and in developing its technological platform.  The number does not

include the millions spent on research and analysis, legal fees, and other necessary

corporate expenditures.  Distad Decl. ¶ 10.  Appellants will receive no return on

that investment so long as Venu is enjoined.  Indeed, the injunction has already

deprived Venu of the opportunity to attract a segment of sports fans during the

season when they are most likely to sign up—the start of football season in

September.  Distad Decl. ¶ 14.

While the injunction remains in place, Appellants continue to expend

significant resources on the platform, without any opportunity to generate revenue.

*Id.*  "Fox continues to employ the Venu team and dedicate additional employees to

develop the platform, costs which are shared by the prospective JV members."  *Id.*

¶ 10.  In addition to payroll, Appellants will have to expend "millions more in

contractual, infrastructure, and other costs".  *Id.* ¶ 11.  Thus, each month that

passes without a Venu launch has a tangible and dramatic negative financial

impact on Appellants. An expedited appeal raises the possibility that Appellants can at least attempt to mitigate their losses with a launch in time to compete for subscribers "in advance of or during the college and NFL playoff games, including the College Football Playoff National Championship, which prospective JV member Disney will broadcast on ESPN on January 20, and the Super Bowl, which prospective JV member Fox will broadcast on February 9, 2025". Distad Decl. ¶ 15. It will also allow them to launch for the latter part of the NHL and NBA regular seasons and ahead of playoffs. *Id.* at ¶ 16.

Those who have been hired to work at Venu, too, will suffer. Without revenue, depending on how long the injunction lasts, the people working on Venu, some of whom left jobs to join the Venu team, are left in employment limbo. Distad Decl. ¶¶ 6–7. Put simply, the injunction is causing significant harm to Appellants, the planned joint venture, and their employees—all to the detriment of consumers who would otherwise have been able to appreciate this new and different, but non-exclusive, product offering, sooner rather than later. *Id.*

Compounding this harm, there is no security in place to protect Appellants. Despite the requirements of Fed. R. Civ. P. 65(c), the district court denied Appellants a bond in the event that the injunction was wrongly issued. Dkt291 at 65 n.42. Thus, Appellants not only lose money each and every day that

8

the injunction remains in place, they also have been denied a security to guarantee recourse for that loss should the district court's order be reversed.

Consumers also suffer. The district court recognized the potential for substantial demand for the product Venu would offer. Fubo filed its claims because it seeks to avoid competition with Venu, baldly stating that "price is king" and that Venu would provide consumers a new, lower-priced option that Fubo believed its potential subscribers would prefer. Appellants expect instead that this new offering will supply a welcome alternative to underserved consumers who are either unwilling or unable to pay for a broad package like Fubo's. Regardless of what the end result may turn out to be, it is clear that, while the injunction might be good for Fubo, it is bad for competition and definitely bad for consumers.

*Second*, the appeal should be expedited in light of Appellants' meritorious bases for appeal. The district court has enjoined a new offering that increases competition by providing an additional, lower-priced option targeted at consumers who do not currently subscribe to the full bundle of channels offered by major distributors. Venu would not increase concentration in any market because it is an entirely new entrant that merely would hold non-exclusive licenses to Appellants' networks. Venu does not eliminate any option in any market. Instead, it creates an option.

9

The district court violated the Supreme Court's long established requirement that a plaintiff demonstrate antitrust injury. As the Court explained nearly four decades ago, "a showing of loss or damage due merely to increased competition does not constitute [antitrust] injury". *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 122 (1986). In a footnote, the district court wrote: "since the Court herein finds that Fubo is likely to succeed on its Section 7 claims, it is also likely that any such competition posed by the JV is contrary to the antitrust laws." Dkt291 at 56 n.38. But that analysis puts the cart before the horse. The notion that "competition" can be "contrary to the antitrust laws" is fundamentally at odds with *Cargill*. Just like the situation in *Cargill*, Fubo complains about a loss of subscribers to Venu, Dkt291 at 57, which is precisely what one would expect *from competition*.

To find anticompetitive effects, the district court relied principally on a flawed reading of *United States v. Columbia Pictures Industries, Inc.*, 507 F. Supp. 412, 430 (S.D.N.Y. 1980), *aff'd*, 659 F.2d 1063 (2d Cir. 1981). In *Columbia Pictures*, film studios created a joint venture to broadcast movies and expressly agreed to license their new movies *exclusively* to this joint venture for the first nine months after release, which the court concluded was a *per se* illegal group boycott. *Id.* at 419. The district court here erred by disregarding the key anticompetitive elements of *Columbia Pictures*—there, the movie studios had

10

agreed not to license their movies to *anyone else* other than the joint venture for nine months—whereas, here, each Appellant expressly is free to license its networks to distributors other than Venu on whatever terms each sees fit. Indeed, each Appellant has current contracts that *require* it to do so. Thus, unlike in *Columbia Pictures*, after Venu's launch consumers will continue to receive Appellants' networks via a panoply of distributors, including via Fubo itself. *Id.* Again, rather than reducing consumer choice—as in *Columbia Pictures*—Venu would *increase* it.

Moreover, while stretching *Columbia Pictures* beyond its reach, the district court failed to properly apply the Supreme Court's more recent decisions in *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004), and *Pacific Bell Telephone Co. v. LinkLine Communications, Inc.*, 555 U.S. 438, 442 (2009). Dkt291 at 36. Breaking new ground, the district court held that the very act of forming a joint venture in a downstream market placed the Members' unilaterally negotiated licenses to Fubo and other distributors beyond those decisions' "no duty to deal" rule. But *Trinko and Linkline* have long established that "a firm with no duty to deal in the wholesale market has no obligation to deal [in the retail market] under terms and conditions favorable to its competitors." *LinkLine*, 555 U.S. at 450–51. The district court dismissed the relevance of those cases on the ground that the joint venture here involved

11

"concerted action" (and cited cases outside the Supreme Court or Second Circuit in doing so), yet the court did not find any concerted action by Appellants in the *licensing* of their networks to Fubo or other distributors, which is the only basis on which Appellants supposedly are preferencing Venu compared to Fubo. Because it is undisputed that each Appellant will continue to license its networks independently, *LinkLine* and *Trinko* control. These, and other serious issues, merit expedited review.

   *Third*, the public interest favors expediting the appeal. The district court acknowledged that today is a "time of rapid change in the television [] industry". *Id.* at 36. Federal courts have "counsel[ed] greater caution in judicial intervention" in antitrust cases involving dynamic markets because "a presumption of anticompetitive effects would be misleading in [a] particularly dynamic and rapidly changing industry". *N.Y. v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 248 (S.D.N.Y. 2020). Here, not only did the district court intervene in the midst of a dynamic and rapidly changing industry, it did so on an incomplete record as part of an expedited preliminary injunction proceeding. At a minimum, appellate review of that decision should be similarly expedited.

   So long as this erroneously ordered injunction remains in place, Fubo and other market participants will be insulated from competition. Consumers will be deprived of the benefits of that competition, including being barred from

accessing an innovative new product at a lower price and the additional new bundles and offerings that will likely follow from other distributors. Dkt291 at 46. The public interest favors prompt resolution of this issue.

## CONCLUSION

For the foregoing reasons, Appellants request that this Court order the following briefing schedule, to which Appellees consent:

- Appellants' Brief due September 20, 2024.
- Appellee's Brief due November 4, 2024.
- Appellants' Reply Brief due November 25, 2024.

Appellants also respectfully request that this Court schedule an oral argument to take place at the Court's earliest opportunity, preferably in December 2024.

Dated: August 23, 2024

CRAVATH, SWAINE & MOORE LLP

/s/ J. Wesley Earnhardt

Antony L. Ryan
J. Wesley Earnhardt
Yonatan Even
Damaris Hernandez
Michael P. Addis

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

*Attorneys for The Walt Disney Company;
ESPN, Inc.; ESPN Enterprises, Inc.; and
Hulu, LLC*

DECHERT LLP

Andrew J. Levander
Steven E. Bizar
Steven A. Engel
John (Jay) Jurata
Michael H. McGinley

1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Attorneys for Defendant Fox Corporation*

14

WEIL, GOTSHAL & MANGES LLP

David L. Yohai
Adam C. Hemlock
Theodore E. Tsekerides
Robert W. Taylor
A.J. Green
Elaina K. Aquila

767 Fifth Avenue
 New York, NY 10153
  (212) 310-8000

*Attorneys for Warner Bros. Discovery Inc.*

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

I hereby certify that this paper complies with the type-volume limitation of
Fed. R. App. P. 27(d)(2)(A) because this paper contains 3,081 words. This paper
complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the
typestyle requirements of Fed. R. App. P. 32(a)(6).

August 23, 2024

                                    /s/ J. Wesley Earnhardt
                                       J. Wesley Earnhardt

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

|  |  |
|---|---|
| FuboTV, Inc., and FuboTV Media, Inc., | |
| Plaintiffs-Appellees, | |
| v. | No. 24-2210 |
| The Walt Disney Company, et al., | **DECLARATION OF PETER DISTAD IN SUPPORT OF DEFENDANTS-APPELLANTS' EMERGENCY MOTION TO EXPEDITE** |
| Defendants-Appellants. | |

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      I have been designated as the Chief Executive Officer of Venu Sports ("Venu"), an anticipated joint venture ("JV") of The Walt Disney Company ("Disney"), Fox Corporation ("Fox"), and Warner Bros. Discovery ("WBD").

2.      I have spent much of my career launching innovative products in the streaming entertainment industry.  Between 2013 and 2023, I served as an executive at Apple, where I was initially responsible for the Apple TV hardware product, and then launching and scaling the Apple TV app, Apple TV+, and Apple Sports, including MLB Friday Night Baseball and MLS Season Pass.  Before that, I worked at Hulu from 2007 to 2013, including as a member of the original launch team and serving on the executive management team as Senior Vice President of Marketing and Distribution.

3.      Upon its launch, Venu will license and distribute to consumers the linear channels of the three JV members that carry live-sports programming.  Venu will operate as a virtual

Multichannel Video Programming Distributor, which will provide such linear content to consumers through an internet streaming application. The same content of each prospective JV member is and will remain available through various other distributors.

4. Because the JV has not yet launched as an independent business, the prospective JV members agreed that Fox would employ Venu's future team to build the business and prepare for launch. Since joining Fox in March 2024, I have been working nonstop to build Venu's team and to work with those employees, as well as with many others at Fox and the other prospective JV members, to perform the substantial technological work necessary to develop the Venu streaming platform and to prepare the financial, marketing, communications, and legal infrastructure necessary for developing and running a new streaming business. Since Venu will be owned in equal one-third shares by each of the prospective JV members, Disney and WBD have agreed to reimburse Fox for each of their shares in building this new business.

5. In my capacity as the designated Venu CEO, I am familiar with Venu's anticipated corporate structure, its work force, its expenses, and its budgeting.

6. Each of the prospective JV members has suffered substantial financial harm from the Preliminary Injunction, which has thrown off Venu's launch plans, and the prospective JV members will continue to suffer such harm until this appeal is decided. But the prospective JV members are hardly the only parties with a stake in this appeal. The Preliminary Injunction directly affects the members of my team, all of whom are concerned about their future employment because of the Preliminary Injunction. Consumers also have been hurt, because they have been deprived of the opportunity to subscribe to a new, lower-cost streaming service that appeals to sports fans who are either unwilling or unable to pay for the traditional Pay TV bundle of channels.

2

7.      *First*, the Preliminary Injunction is causing ongoing harm to the Venu team.  In preparation for Venu's launch, Fox has hired 127 employees dedicated to Venu.  All of us joined for the specific purpose of bringing a dynamic new sports-streaming service to market.  Many left other jobs to pursue this new opportunity.  We had anticipated that Venu would launch at the beginning of the NFL and college football season (in late August or early September).  The Preliminary Injunction has shattered those expectations and placed our new platform in limbo, as we are prevented from bringing to market this exciting new product, and the injunction directly threatens our future employment.  An expedited appeal could minimize the harm that the Preliminary Injunction and the resulting uncertainty imposes on Venu employees and their families.

8.      In addition, Venu was well into the process of recruiting additional candidates to join as prospective employees to start working at or directly after launch.  All of those recruiting efforts have been put on hold in light of the Preliminary Injunction, leaving many candidates in limbo about their future employment prospects.

9.      These employees are not alone in suffering from this injunction.  In building the JV, Fox and its affiliates have tasked 355 tech employees and 123 contractors to work on developing the streaming application (principally with respect to engineering, operations, and product development of the software platform).  Those Fox employees and contractors are allocating a percentage of their time to the venture, which equates to 83 full-time employees and 52 full-time contractors.  Those employees too are caught in limbo during the pendency of this appeal.

10.      *Second*, the Preliminary Injunction is causing the prospective JV members to continue to expend significant resources on the platform, without any opportunity to generate revenue, while awaiting the results of the appeal.  As discussed above, Fox continues to employ

the Venu team and dedicate additional employees to develop the platform, costs which are shared by the prospective JV members. By the end of August 2024, the prospective JV members will have collectively invested about $74 million into Venu, and each month the costs of this operation grows. This number does not include the additional millions spent on market analysis, research, legal fees, and other necessary corporate expenditures.

11.     Each month going forward, the JV members will pay millions of dollars in employee payroll for the Venu team, as well as millions more in contractual, infrastructure, and other costs.

12.     Until and unless this appeal is resolved, Venu will not have any opportunity to earn revenue to offset any of these costs.

13.     Given that the District Court did not require Fubo TV to put up a bond, it is my understanding that many of these costs are likely to be unrecoverable. The expedited appeal would reduce these ongoing, and likely unrecoverable, costs.

14.     *Third*, the Preliminary Injunction prevents Venu from launching during the professional and college football season. As the District Court recognized, football season is a critical time for services that stream sports. Football is the most watched sport in the United States, and many fans sign up for streaming services at the beginning of the football season. The Preliminary Injunction deprives Venu of the opportunity to attract a segment of sports fans during the season when they are most likely to sign up.

15.     An expedited appeal would help to mitigate this harm. Venu cannot make up for all of the subscribers lost as a result of the Preliminary Injunction. Venu will not launch in time for the NFL and college football regular season kickoffs and will miss out on the opportunity to offer consumers a new and cheaper option to receive a portion of the NFL's and college football conferences' games. But an expedited appeal raises the possibility that Venu might launch in

4

advance of or during the college and NFL playoff games, including the College Football Playoff National Championship, which prospective JV member Disney will broadcast on ESPN on January 20, 2025, and the Super Bowl, which prospective JV member Fox will broadcast on February 9, 2025. Venu could use those marquee games as an opportunity to attract subscribers.

16.     Football is not the only sport that takes place in the fall. Both the NHL and NBA seasons begin in October. An expedited appeal would help Venu avoid losing subscribers who otherwise would have joined to watch those popular leagues play.

17.     And *fourth*, consumers also have been hurt, because they have been deprived of the opportunity to subscribe to a new, lower-cost streaming service that appeals to sports fans who are either unwilling or unable to pay for the traditional Pay TV bundle of channels. The prospective JV members have pursued Venu precisely because there are an increasing number of U.S. households who do not subscribe to the Pay TV bundle (estimated at about 60 million). The number of Pay TV subscribers has declined in every single quarter since 2018, and the first quarter of 2024 was the worst over that six-year period. Venu would offer a new option to this ever-growing segment of consumers, particularly those who are sensitive to price, and the Preliminary Injunction harms these consumers by depriving them of such a choice.

18.     Expedited appeal would potentially shorten the time that those consumers are deprived of that choice.

19.     For these reasons, an expedited appeal of this matter is in the best interests of Venu's employees, the prospective JV members, and consumers.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on August 23, 2024, in Los Gatos, California.

Peter Distad

5