# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | |
|---|---|
| FUBOTV INC. and FUBOTV MEDIA INC.,<br><br>       *Plaintiffs-Appellees*,<br><br> -against-<br><br>THE WALT DISNEY COMPANY, ESPN, INC., ESPN ENTERPRISES, INC., HULU, LLC, FOX CORPORATION, and WARNER BROS. DISCOVERY, INC.,<br><br>       *Defendants-Appellants*. | No. 24-2210 |

## PLAINTIFFS-APPELLEES' RESPONSE
## TO EMERGENCY MOTION TO EXPEDITE APPEAL

# CORPORATE DISCLOSURE

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Plaintiffs-Appellees fuboTV Inc. and fuboTV Media Inc. respectively certify the following:

fuboTV Media Inc. is a wholly owned subsidiary of fuboTV Inc. fuboTV Inc. is a publicly-traded company whose shares are listed on the New York Stock Exchange. fuboTV Inc. has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

## TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................1

ARGUMENT ....................................................................................................4

    I.    Appellants Mischaracterize the Record.......................................................4

    II.   Appellants Mischaracterize the District Court's Decision........................7

Appellees fuboTV Inc. and fuboTV Media Inc. (collectively, "Fubo") respectfully submit this response to Defendants-Appellants' Motion to Expedite Appeal. Fubo does not oppose Appellants' proposal for an expedited briefing schedule. But Fubo objects to the numerous misstatements, unsupported factual assertions, and mischaracterizations of the district court's decision made by Appellants in their claimed "Emergency" Motion. Fubo submits this short response to address those errors and omissions—and to ensure that this Court is presented with an accurate description of the record and decision on appeal before it resolves the Motion.[1]

## BACKGROUND

Fubo is a distributor of live television content over the internet. Since its launch in 2015, it has sought to provide a streamlined television package tailored to sports fans. The Walt Disney Company, Fox Corporation, and Warner Bros. Discovery, Inc. (collectively, "Appellants") are major programmers of television content that own and operate must-have linear sports networks like ESPN.

---

[1] Appellants' coversheet to their Motion incorrectly stated that Fubo would not file a response. Fubo told Appellants that it would not oppose an expedited briefing schedule (and that it takes no position on the timing of argument). But Appellants did not ask Fubo whether it would file a response when they asked for its position on their Motion, as Local Rule 27.1(b)(3) requires. Nor did Appellants provide Fubo with a copy of the Motion before filing it. After reviewing the Motion, Fubo determined that a response was necessary to correct Appellants' inaccuracies and omissions.

1

"Together, [Appellants] own over 60% of the telecast rights to nationally broadcast live sports, and an even larger share of the most-watched sports like football and basketball and the most-watched events like playoff or championship games." Dkt. 291 at 2. Appellants separately license their networks to distributors like Fubo. In so doing, each Appellant has historically bundled its sports and non-sports programming—requiring third-party distributors "to carry (and pay for) unwanted non-sports networks that [their] customers rarely watch, as a condition of securing the rights to carry [Appellants'] must-have sports channels." *Id.*; *see also id.* at 40-46 (finding it "indisputable" that Appellants engage in bundling).

On February 6, 2024, Appellants announced the formation of a new joint venture (the "JV") that will offer a package of Appellants' sports networks directly to consumers through a new streaming platform. In a departure from the bundling requirements they have long imposed on third-party distributors, Appellants will license their sports programming to the JV on a standalone basis, unbundled from their non-sports networks. *See id.* at 4, 12-13. In other words, Appellants "have granted the JV an exclusive license to unbundled sports programming." *Id.* at 40. Appellants planned for their JV to launch in the fall of 2024. *See id.* at 21.

On February 22, 2024, Fubo filed a complaint against Appellants in the Southern District of New York, alleging (as relevant to this appeal) that the JV's formation would violate Section 1 of the Sherman Act and Section 7 of the Clayton

2

Act. On April 9, Fubo moved for a preliminary injunction. Fubo sought to enjoin Appellants' launch of the JV or, in the alternative, to enjoin Appellants from enforcing the contractual restrictions that they have imposed on Fubo that prevent Fubo from offering a skinny sports bundle like the JV's. *See id.* at 24.

On April 19, the district court scheduled a preliminary injunction hearing for August and entered an expedited discovery schedule. *Id.* at 25. On July 25, "after approximately three months of expedited but extensive discovery," Appellants filed a 65-page opposition to Fubo's preliminary injunction motion. *Id.* at 29.

The preliminary injunction hearing took place from August 6 to August 12. At the hearing, the district court "heard five full days of testimony from 18 live witnesses and seven video deponents, many of whom are likely to testify at a full trial on the merits, including the parties' respective experts." *Id.* at 34.

On August 16, the district court granted Fubo's motion, preliminarily enjoining Appellants from launching their JV. *See id.* at 68-69. In a 69-page opinion, the court determined based on the parties' briefing, testimony, evidence, and argument that "Fubo is likely to succeed on its claims that by entering into the JV, [Appellants] will substantially lessen competition and restrain trade" in violation of Section 7. *Id.* at 68. The court also found that "Fubo and American consumers will face irreparable harm in the absence of an injunction," *id.* at 5, that "Fubo would 'suffer decidedly greater harm from an erroneous denial of an

3

injunction than [Appellants] would suffer from an erroneous grant,'" *id.* at 64 (citation omitted), and that the public interest is served by a preliminary injunction that preserves the status quo pending full adjudication of Fubo's claims, *id.* at 66.

## ARGUMENT

### I. Appellants Mischaracterize the Record

Appellants' claim of "emergency" lacks any basis in the record. Appellants argue (at 1) that "time is of the essence" in launching their JV. But in the proceedings below—across months of "extensive discovery," "voluminous briefing," and a five-day evidentiary hearing—Appellants "offered ***no*** witness testimony or documentary evidence on the harms (economic or otherwise) that they may face from" a delay in the JV's launch. Dkt. 291 at 29, 34, 65 (emphasis in original). The district court reasonably concluded that it could not "divine a quantifiable harm to [Appellants] where the record illuminates none." *Id.* at 65.[2]

Appellants identify zero record support for the specific harms that they now allege in their Motion. Appellants claim (at 7-8) that they will suffer financially

---

[2] Appellants have only themselves to blame for the lack of security on appeal. *See* Mot. at 8-9. Appellants did not raise the issue of a bond until August 13, in their post-hearing brief—a brief that the district court "only permitted on the eve of the Hearing, long after [they] had filed their Opposition brief." Dkt. 291 at 65 n.42. And, even then, Appellants "offer[ed] no legitimate analysis" in support of the bond amount that they proposed. *Id.* "In the face of such a conclusory and undeveloped record, and without the opportunity for Fubo to respond," the district court correctly concluded that it "need not issue a bond." *Id.* (citing *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974)).

4

from delay—but cite no documents or testimony regarding the profits or revenues they are expected to lose. They argue (at 8) that the JV's employees will be "left in employment limbo" pending appeal—but have not claimed or attempted to quantify any concrete impact on any employee's job. (In fact, they make clear (at 7) that "Fox continues to employ the Venu team.") And they argue that consumers will suffer without the JV—ignoring that the district court found the opposite based on the extensive factual record before it. *See, e.g.*, Dkt. 291 at 64 (launch of the JV "increase[s] the risk that consumers will be vulnerable to price increases, decreased quality, and decreased options in the market").

Aside from unsworn factual allegations by lawyers, the only support that Appellants cite for their claimed harms is a new declaration from the JV's planned CEO Pete Distad—a witness with a personal stake in the outcome of this appeal, whom Appellants could have called to testify as part of the five-day hearing but chose not to. *See id.* at 52 (noting how Mr. Distad's compensation is tied to the JV's success). That late declaration from a financially interested witness, attached to what Appellants otherwise maintain (at 1 n.1) is merely a "procedural" motion, cannot fill the gaping evidentiary hole that Appellants left in the actual record.

Moreover, Appellants' arguments and evidence in this case undermine their sudden claim of "emergency" from a delayed launch of the JV in at least two ways.

5

*First*, until filing the Motion at issue, Appellants had consistently insisted that they expect the JV to be at best a marginal offering, unlikely to attract a significant number of subscribers or even turn a substantial profit. *See, e.g.*, Dkt. 239 at 46 (describing the JV as "a niche service"); Dkt. 286 at 11 (emphasizing that they "make more money" by licensing a fat bundle of channels to a distributor rather than a skinny sports bundle). Their newfound alarm at the calamity that they now claim will ensue from a delay of the JV's launch contradicts those earlier efforts to downplay the JV's likely impact.

*Second*, Appellants do not need the JV to offer their sports networks directly to consumers. Each Appellant could offer an independent streaming product in a competitive market. Appellants recognize as much in their Motion, noting (at 4) that Disney plans to launch an ESPN direct-to-consumer service next year. The only conduct the district court preliminary enjoined is Appellants' effort to obtain a monopoly over skinny sports bundles via a cartel that grants the JV an exclusive license to Appellants' combined unbundled sports. *See* Dkt. 291 at 4 ("[I]f the JV is allowed to launch, it will be the *only* option on the market for those television consumers who want to spend their money on multiple live sports channels they love to watch, but *not* on superfluous entertainment channels they do not.").

6

## II. Appellants Mischaracterize the District Court's Decision

Appellants' hyperventilation over the careful, considered 69-page opinion of the district court is also misguided. The district court's decision is based on settled precedent in the Second Circuit, full consideration of the facts presented by both sides, and numerous credibility determinations that should be accorded deference. *See, e.g., id.* at 34 ("The Court has observed each witness's demeanor, considered the content of their testimony within the context of the documentary evidence and entire facts of this case, and heard argument from the lawyers regarding how the governing law applies to these facts."). For the most part, the district court relied on Appellants' own documents and testimony from their own witnesses. *See, e.g., id.* at 42 (finding Appellants' "denials of the existence of their bundling practices to be entirely incredible and completely belied by the ample evidence before the Court"); *id.* at 45 (noting that Appellants' "witnesses and documents reveal that they understand the fundamental appeal of the JV" to be its exclusivity).

While this response is not the occasion to argue the merits of the appeal, Fubo cannot allow the misleading impression that it agrees with Appellants' Motion as filed by Appellants. Fubo agreed only to a briefing schedule, so as not to burden this Court with that ministerial matter. Nothing more.

7

Dated:  August 27, 2024	Respectfully submitted,

	  /s/ Michael K. Kellogg
	Michael K. Kellogg
	Mark C. Hansen
	Gavan W. Duffy Gideon (application forthcoming)
	KELLOGG, HANSEN, TODD, FIGEL
	  & FREDERICK, P.L.L.C.
	1615 M Street NW
	Suite 400
	Washington, DC 20036
	Tel.:  (202) 326-7900
	Fax:  (202) 326-7999
	Email:  mkellogg@kellogghansen.com
	              mhansen @kellogghansen.com
	              ggideon@kellogghansen.com

	*Counsel for Plaintiffs-Appellees fuboTV Inc. and fuboTV Media Inc.*

8

## CERTIFICATE OF COMPLIANCE

I hereby certify that this paper complies with Federal Rules of Appellate Procedure 27 and 32 and Local Rule 27.1. As measured by the word processing system used to prepare this paper, there are 1,745 words. This paper complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

Dated: August 27, 2024                    Respectfully submitted,

                                          */s/ Michael K. Kellogg*
                                          Michael K. Kellogg

9